HOLDEN, Respondent, v. MISSOURI RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1904.

1. EXPERT TESTIMONY: Hypothetical Question. In examining a physician as an expert, in an action for personal injuries, a question based upon a state of facts shown by the evidence in respect to the injury, inquired of the physician whether or not that state of facts would, in the opinion of the witness, produce the diseased condition which he found on examination of the plaintiff, was not objectionable as embodying two opinions—one founded on personal examination and one on hypothesis.

2. PERSONAL INJURIES: Future Consequences: "Likely." In an action for damages on account of personal injuries, an instruction in regard to the future consequences which authorized a recovery for such pain as the plaintiff would be "likely" to suffer in the future, was not erroneous, because, by a fair construction, the term "likely" means reasonably certain.

3. NEGLIGENCE: Several Acts of Negligence: Single Verdict. In an action for damages on account of personal injuries caused by the negligence of the defendant, where several distinct acts of negligence were charged, a general finding of negligence by the jury was sufficient; it was not necessary for the jury to agree that defendant was guilty of any one of the specific acts of negligence charged.

4. PERSONAL INJURIES: Excessive Verdict. In an action for damages on account of personal injuries where the evidence

tended to show, as a result of the injuries, the plaintiff had been reduced from a strong, robust man to a mere physical wreck, had lost the hearing of one ear and partly that of the other, that his eyesight and his sense of touch were greatly impaired, that his suffering had continued from the day of the injury to the time of trial and was likely to continue for an indefinite time in the future, a verdict for $3,000 was not excessive.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann, George W. Easley* and *Crawley & Jamison* for appellant.

The circuit court erred in giving plaintiff's instruction marked "5-P," on the measure of damages. Complaint is here made particularly of the concluding clause, which authorizes recovery "for such pain of body or mind, or physical inconvenience, if any, as you may find plaintiff to have suffered, or that he will be likely to suffer in the future by reason of said injury." A commission to award prospective damages is vague enough even when confined to consequences which will actually and naturally flow from the supposed injury. But when such a commission is judicially supplied with wings in order to enable a jury to sail into unexplored regions of mere likelihood and possibility, the damages brought back upon the return flight of the jury's imagination are too speculative for even a street railway company to have to pay. Russell v. Columbia, 74 Mo. 480; Bradley v. Railway, 138 Mo. 301, 39 S. W. 763; Chilton v. St. Joseph, 143 Mo. 199, 44 S. W. 766; Bigelow v. Railway, 48 Mo. App. 374; Ross v. Kansas City, 48 Mo. App. 446; Fry v. Railroad, 45 Iowa 416; White v. Railway, 61 Wis. 636, 50 Am. Rep. 154; Hardy v. Railway, 89 Wis. 187, 61 N. W. 771; Kucera v. Lumber Co., 91 Wis. 637, 65 N. W. 374; Cameron v. Trunk Line, 10 Wash. 507, 39 Pac. 128; Meeteer v. Railway, 63 Hun

533, 18 N. Y. Sup. 561; Curtis v. Railroad, 18 N. Y. 534, 75 Am. Dec. 258; 3 Sutherland on Damages (Ed. 1884), p. 261; 1 Sutherland on Damages (3 Ed.), sec. 123, and vol. 3, sec. 944; 1 Joyce on Damages, secs. 244-245; Voorheis on Damages, p. 72, sec. 46; Watson on Personal Injuries, secs. 302-303; Schwend v. Transit Co., 80 S. W. 40.

*Richard A. Jones* for respondent.

(1) The instruction complained of by defendant correctly declares the law and limits the jury in their assessment of damages to consideration of only those consequences of the injury which will probably result from it in the future. (2) There is no roving commission conferred upon them to take into consideration in making up their verdict consequences which may continue in the future, but only those which are reasonably certain. In the following cases, the use of the word "likely," as defining the degree of certainty which is to guide the considerations of the jury in determining future damage is expressly approved. Railway v. Davidson, 76 Fed. 524; McLain v. Railway, 100 Mo. App. 386, 73 S. W. 909; Scott Tp. v. Montgomery, 95 Pa. St. 444; Corliss v. Railway, 70 Barb. 291; Knoll v. Railway, 62 N. Y. Supp. 16; s. c., 168 N. Y. 592; 1 Sedgwick on Damages (3 Ed.), sec. 173; 1 Sutherland on Damages (3 Ed.), sec. 123. (3) No objection is made by appellant because the petition states more than one negligent act as the cause of injury and that each of said breaches of duty is not contained in a separate count. Indeed, appellant admits that all of said charges of negligence, contributing to the same injury for which respondent seeks recovery, are properly joined in one count, and such is the rule of practice. Oglesby v. Railway, 150 Mo. 155; Rissler v. Ins. Co., 150 Mo. 373, 51 S. W. 755; Comstock v. Davis, 51 Mo. 569; Newton v. Miller, 49 Mo. 298; Hotel Co. v. Sige-

ment, 53 Mo. 177. (4) This is a sufficient answer to the contention that the jury must make separate findings on each issue of fact, for a general verdict upon each count of the petition is all that is required. R. S. 1899, sec. 721. And such separate finding is only necessary where such counts contain different causes of action. Brady v. Connelly, 52 Mo. 19; Ackers v. Bank, 63 Mo. App. 316; Oglesby v. Railway, 150 Mo. 155, 37 S. W. 829, 57 S. W. 758; Campbell v. King, 32 Mo. App. 38; Lancaster v. Life Ins. Co., 92 Mo. 460.

## STATEMENT.

In December, 1897, a wagon on which plaintiff was being driven down Pine street, in the city of St. Louis, was struck, at the intersection of Pine and Thirteenth streets, by one of defendant's street cars travelling on Thirteenth street, and plaintiff was thrown from the seat to a granite pavement eight feet below, alighting on his head. A deep gash, six to eight inches in length, on the right side of his head, and other scalp wounds, were the resulting injuries. The suit is to recover the damages caused by the accident.

Three distinct acts of negligence are alleged in the petition: First, the violation of the ordinance limiting the speed of street cars to ten miles per hour in the district where the accident occurred; second, violation of what is known as the vigilant watch ordinance; third, negligence in operating the car at a careless and negligent rate of speed.

In respect to the damages, the petition alleges:

"That prior to said injury plaintiff was a strong and healthy man, employed and earning the sum of $14 per week; that on account of such injury he was confined to his bed for a number of weeks and was unable to resume his employment, for a period of seven weeks and was obliged to, and did, expend and become liable for a large sum of money for physicians' and surgeons'

services, medicines and supplies necessary to promote his recovery, has suffered and will continue to suffer great bodily and mental pain, is disfigured for life, practically deaf in one ear, and his capacity for following his vocation of machinist is lessened; all to plaintiff's damage in the sum of $5,000.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $5,000 and costs."

The answer was a general denial and a plea of contributory negligence.

In respect to the accident itself, the evidence offered by plaintiff tended to prove the three several acts of negligence alleged in the petition, that offered by the defendant tended to show that the operators of the car were not guilty of any negligence whatever. In respect to the extent and duration of plaintiff's injuries, the evidence offered in his behalf tended to show that at the time of the accident he was a powerful, robust, healthy man, weighing two hundred pounds, and for a number of years previous had been constantly employed at work as a machinist. At the trial he was greatly reduced in weight, had lost much of his physical strength, his sense of feeling was greatly impaired, his eyesight had greatly failed him, he was entirely deaf in his right ear (over which the principal injury was inflicted) and the hearing of his left ear was affected. The evidence tended to show that these injuries resulted from his fall from the wagon to the street.

The evidence offered by defendant tended to show that the impairment of plaintiff's hearing resulted from catarrh. Plaintiff testified that the injury caused his deafness.

On cross-examination, Dr. Bradley, introduced by plaintiff as an expert, was asked the following question:

"Q. Supposing this to be a fact, Doctor, that some time prior to Mr. Holden calling on you he was thrown from a wagon some six or eight feet above the surface

of the ground and fell on his head, on the right side, and fell a distance from the seat down to the ground, the surface of the ground was covered with granite blocks, a cut resulted extending from about this portion of his head (indicating) back six inches (right side), from which he was confined to his house about seven weeks, and just after that a deafness resulted in his right ear, state whether or not under those circumstances you believe that fall caused such injury as the result as you found in your examination?''

Defendant objected to the question for the reason ''it calls for two opinions; one of them founded on his personal examination, the other founded on the hypothesis, and counsel insists that they be separated; that his answer to the hypothesis be confined to that, and when testifying from the examination that he be confined to that.''

The objection was overruled, to which ruling defendant duly objected and excepted, and the witnesses answered the question as follows:

''Such a cause might result in a deafness; it might be simply temporary and it might be permanent; and as to the discharge why it would have to be the impairment; and as to that why I couldn't say positively about whether this resulted, this purulent discharge, if there was an injury for that, there was a cause, a mastoid, or inflamed mastoid cells.''

The court gave the following instruction on the measure of damages:

''If you find for the plaintiff, your verdict will be for such amount, not to exceed five thousand dollars, as you believe from the evidence will compensate him for such loss of earnings or decreased earning capacity, if any, as you may find to have resulted from the injury, or as will directly result in the future therefrom, and for such pain of body and mind, or physical inconvenience, if any, as you may find plaintiff to have suffered,

or that he will be likely to suffer in future by reason of such injury."

The court instructed the jury that nine of its number might make a verdict. In this connection the defendant asked, but the court refused, the following instruction:

"By another instruction the court has told you under what circumstances nine or more of your number may return a verdict and as to how the same shall be signed. In connection with said instruction given you, you are further instructed that before you are authorized to return a verdict for plaintiff in this action, it is necessary that nine or more of you shall find from the evidence and agree that defendant was guilty of at least one of the specific grounds of negligence submitted to you for your determination, and that it is not sufficient that nine of your number agree to find for plaintiff, when the nine so agreeing differ as to the specific act or acts of negligence of which they find defendant guilty."

A verdict (concurred in by all the jury) finding for plaintiff and assessing his damages at $3,000, was returned. After unavailing motions for new trial and in arrest, defendant appealed to this court.

BLAND, P. J. (after stating the facts).—1. The question propounded to Dr. Bradley, to which defendant objected, does not call for two opinions, as contended by defendant, but assumes the existence of the fact to which the witness had previously testified, to-wit, that he had made a professional examination of plaintiff's ears and found them in the condition described in his evidence. Assuming the existence of this condition, the question then proceeded to set forth a state of facts in evidence in respect to the injury and to inquire whether or not this state of facts would, in the opinion of the witness, produce the diseased condition of plaintiff's ears that he had found. There was

before the witness a given condition or effect ascertained by his examination. The injury was described by the question and he was asked if the injury described would likely produce the effect he found. On examination of an expert concerning a personal injury, a question may be either as to the cause of the injury or condition or, conversely, what would be the effect on the body of such force or blow, or in the presence of a given effect, what would cause it or might result therefrom. Railroad v. Smith, 69 Ill. App. 69; Williams v. State, 64 Md. 384; Bush v. Railway, 113 Mich. 513; Griffith v. Railroad, 17 N. Y. Sup. 692. No error was committed in overruling defendant's objection to the question.

2. Defendant insists that the following clause in the instruction on the measure of damages, to-wit, "or that he will be likely to suffer in the future by reason of said injury," gave to the jury "a roving commission" to assess whatever damages for future loss they might believe would, by any possibility or probability, result from the injury, basing this contention on the word "likely." In Schwend v. St. Louis Transit Co., 80 S. W. 40, we held that present damages for future consequences as the result of an injury could not be recovered, unless such future consequences would reasonably result from the injury, and condemned an instruction that told the jury it might assess damages for such future consequences as might result from the injury. We have followed the Schwend case in a number of other decisions rendered at this term but not yet reported. We think the best considered cases, here and elsewhere, base the right to recover present damages for future consequences upon the fact that there is a reasonable certainty that such future consequences will accrue. Does the instruction under consideration confine the jury to the assessment of such damages as are reasonably certain to accrue in the future from the injury complained of? The term, "likely" was con-

strued, in the case of Illinois Central Railway Co. v. Davidson, 76 Fed. 517, to mean what may be reasonably supposed, and it was said: "Things which, under the evidence, are likely to happen, are reasonably certain to happen." The same judicial construction was given the term in Scott Township v. Montgomery, 95 Pa. St. 444, and in Curtiss v. Railroad, 20 Barb. 282. In Hardy v. Railway, 89 Wis. 183, the charge allowed the jury to assess damages for pain and suffering which the plaintiff "may endure hereafter," and for the loss of such time "as the evidence convinces you she will be likely to suffer hereafter." Commenting on this instruction, the court said: "The rule is that the alleged permanent disability, in order to be a ground for damages, must be one that is reasonably certain to result from the injury complained of," citing White v. Railroad, 61 Wis. 536. In the latter case the court condemned a charge that authorized the jury to assess damages for such future loss as may accrue from the injury complained of. In Kucera v. Merrill Lumber Co., 91 Wis. 637, on the authority of Hardy v. Railway, supra, the court held a charge erroneous that told the jury the plaintiff might recover for the pain and suffering which he was "likely to endure in the future." The charge in the Hardy case authorized the jury to assess damages for pain and suffering which the plaintiff "may endure hereafter." We think it was this clause in the charge the court had in mind when it said the charge was too broad in its terms. This is apparent, we think, from the fact that the case of White v. Railway, supra, is cited as authority for holding the charge erroneous. If the court did not have in mind the word "likely," used in the second clause of the charge, then the term was not construed by the court. No reference whatever is made to the term anywhere in the opinion, nor is the term construed in the Kucera case. The charge is not discussed at all but simply held

erroneous on the authority of the White case. We think the court overlooked the first clause in the charge in the White case and for this reason misapprehended what the court had in mind when it condemned the charge, and we conclude that Kucera v. Merrill Lumber Co., supra, is not authority for holding that the term "likely," as used in this character of instruction or charge to a jury gives it "a roving commission" to go into the field of conjecture to assess present damages for future consequences resulting from an injury. Among other definitions of the term "likely," given by some of the lexicographers, are the following: "Worthy of belief." Webster's Dictionary. "Reasonably expected." Standard Dictionary. "As may be reasonably supposed." Century Dictionary. Of course the term has other significations less definite than the foregoing, and for this reason it should not be used in an instruction to a jury when plainness and definiteness of direction are required, but we do not think the jury understood by the instruction that they were commissioned to estimate the damages irrespective of what they might believe from the evidence would reasonably result in the future from the consequences of the injury, but did not understand that the future losses for which they might assess present damages were such losses as were reasonably certain to accrue from the injury. It was in this sense the learned trial court understood the term as used in the instruction, and there is nothing in the record to induce us to believe that the jury had a different understanding. We think a fair construction of the term, as used in the instruction, means, and was understood by the jury to mean, such losses as were reasonably certain to accrue in the future as the result of the injury complained of.

3. Negligence is thus defined by the text-writers: "Negligence, in its civil relations, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as immediately produces,

in an ordinary and natural sequence, a damage to another. The inadvertency, or want of due consideration of duty, is the *injuria*, on which, when naturally followed by the *damnum*, the suit is based." Wharton on Negligence, sec. 3. .

"Negligence, constituting a cause of civil action, is such an omission, by a responsible party, to use that degree of care, diligence and skill which it was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended damage to the latter." 1 Shearman & Redfield on Negligence, sec. 3.

Thompson on Negligence (1 Ed.), vol. 1, p. 135, approved the following definition of negligence of WILLES, J., in Vaughan v. Railroad, 5 Hurl. & N. Exch. 678, in which it was said: "Now, the definition of negligence is the absence of care, according to circumstances."

In McMahon v. Pacific Express Company, 132 Mo. 641, 34 S. W. 478, our Supreme Court said: "Negligence consists in doing something which a reasonably prudent man would not have done under the circumstances, or in failing to do something which a reasonably prudent man, under the circumstances, would have done."

In American Brewing Association v. Talbor, 141 Mo. l. c. 685, 42 S. W. 679, a reasonably prudent man is described as follows: "The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things."

Whether or not the defendant was negligent, in an action founded on negligence, generally includes two questions: (1) whether the particular act or acts charged in the petition were performed or omitted, and

(2) whether the performance or omission of these acts or some one or more of them was a breach of legal duty. 1 Shearman & Redfield on Negligence, sec. 52. It is said in numerous decisions that the first of these questions is for the jury and the second is a question of law for the court. This is so when the act complained of is a violation of a statute or city ordinance or where the standard of duty is otherwise fixed or where the act is so obviously negligent that reasonable minds can not differ about it. But there is a territory beyond this boundary line where the court may not say as a matter of law that the act was or was not negligent, but must give to the jury a standard by which to gauge or measure it and leave it to them to determine from their own experience and observation whether or not the act or omission was negligent. 1 Shearman & Redfield on Negligence, sec. 53.

As Judge THOMPSON says (2 Thompson on Negligence (1 Ed.), pp. 1235-36): "In the great body of cases, there is not evidence of facts from which the court may say that, if proven, they substantiate the case of the plaintiff or defendant. This arises from the fact that cases present such a variety of circumstances that courts have had comparatively little opportunity of defining the duties of the parties, and for the same reason it is eminently proper that the degree of care demanded of persons in various situations should be determined by the triers of fact."

In McCully v. Clarke & Thaw, 40 Pa. St. 399, the action was brought for negligence. The point of the accusation was that the defendants had so negligently kept and continued a certain pile of coal which had taken fire, and so negligently and wrongfully failed to extinguish the fire, that the warehouse of the plaintiff had been ignited and destroyed. In respect to this state of facts, STRONG, J., said the court was right in declining to charge the jury that if they believed certain facts enumerated were proven, defendants were

guilty of negligence as a matter of law; that whether or not the facts enumerated constituted negligence was a question for the jury.

In Grand Trunk Railway Co. v. Ives, 144 U. S. 408, it was said: "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury."

The first and second specified acts of negligence set forth in the petition charged violations of city ordinances in respect to the operation of street cars in the city of St. Louis, and in regard to this it was the duty of the court to tell the jury that a violation of either or both was negligence *per se*. To establish the third specification (negligence in operating the car at a careless and negligent rate of speed), it devolved on the plaintiff to show that the speed was not only excessive but that it was negligent. Whether or not it was negligent depended upon the place and the surrounding circumstances and unless these were such that reasonable minds could come to no other conclusion than that it was negligence, the question of excessive speed and negligence was for the jury to determine.

The court, in respect to these several acts of negligence, instructed the jury on the part of defendant as follows:

"The court instructs the jury that unless they believe from the greater weight of the evidence that the defendant, through its servants in charge of its car, at the time and place of the accident, negligently ran its car at an excessive and dangerous rate of speed, or failed to exercise reasonable care to keep a watch for persons and vehicles about to be in danger of being struck thereby, or about to approach the crossing at Thirteenth and Pine streets, or negligently failed to ring the gong, and that one or more of such acts of negligence were the cause of the accident and the plain-

tiff's injuries, then their verdict will be for the defendant," etc.

By this instruction the jury was required to find that defendant was guilty of one or more or all of the acts of negligence charged before it could find for plaintiff. The instruction confined the jury to the specific acts of negligence charged. This was all the law required. If the refused instruction is the law, then the proper way to administer it would be to require the plaintiff, after his evidence is all in, to elect upon which one of the specific allegations of negligence he would rely. This can not be done even though the several specific acts of one kind of negligence should be set forth in separate and distinct counts. The jury, after listening to the evidence, the reading of the instructions and comments thereon by the attorneys in their arguments, on retiring to consider the verdict, is generally prepared to take a ballot. Now suppose the refused instruction should have been given and the jury on its retirement had taken a ballot and that ballot showed that twelve voted to find a verdict for the plaintiff for a certain sum. It would have been the duty of the foreman to sign the verdict and return it into court, and the duty of the court to have received and directed it spread upon its records. Suppose, then, as it would have had the right to do, if the instruction had been given, the defendant had demanded that the jury be polled on each charge of negligence and each juror should have been required to answer on which of the specific charges of negligence be found his verdict, and the answers should have shown that neither twelve, nor nine of the jurors agreed that the defendant was guilty of any one of the specific charges of negligence, should the verdict be set aside? If so, would not this process indirectly require the jury to find a special verdict? We can see it in no other light. A general verdict is all a jury is required to find under our code of civil procedure,

that is, the jury is required to pronounce generally, not specially, upon all the issues submitted to it in the case in favor of either the plaintiff or defendant. The whole matter in issue is submitted to it and it finds generally on the whole matter as submitted. To require the jury to do more than this would be to require it to do something the law does not require.

In Connecticut Life Insurance Co. v. McMurdy, 89 Pa. St. 363, where the questions of fact presented by an issue upon a first count are in some respects different from those involved in the second count, and testimony given under one might not have been competent under the other, the amount which the plaintiff was entitled to recover being the same under both counts, the issues being tried together, a general verdict was held sufficient.

We do not think the argument of defendant's able and ingenious counsel, that if four of the jurors agreed that defendant was guilty of the first act of negligence charged in the petition and not guilty of the second and third acts, and four others believed that it was guilty of the second, but not guilty of the first or third, and if the remaining four believed that it was not guilty of either the first or second but was guilty of the third, then the verdict would be the verdict of four jurors only, is logical. Suppose it should be charged in an indictment that A, on the first day of June, 1897, at the city of St. Louis, in the State of Missouri, did then and there, with intent to kill B, make a felonious assault upon B with rocks, clubs and guns, and did then and there with such rocks, clubs and guns, feloniously inflict upon the body of B divers mortal wounds, of which mortal wounds B thereafter, to-wit, on the second day of June, 1897, died. Suppose on trial the evidence should show that A did make the assault with rocks, clubs and guns, giving to B divers mortal wounds, now would it be contended that the jury, in order to convict A must all agree upon which one of the divers mortal

wounds B died, and agree also on the instrument by which the particular wound of which he died was inflicted, before it could say that A was guilty? If four of the jurors should believe that the mortal wound of which B died was produced by rocks, and four others that it was inflicted by clubs, and four others shall believe that B died of a wound inflicted by guns, would A be entitled to acquittal? Most assuredly not. The gravamen of the offense would be the felonious killing of B. The means used to produce death would be but descriptive of the offense, and if B was feloniously killed by any one or more or by all the means described in the indictment, A should be convicted. State v. Blan, 69 Mo. 317. The gist of the offense would be the felonious killing, so here the gist of the action is negligence. The particular acts of commission or omission constituting the negligence are but descriptive of the tort charged and are alleged for the purpose of notifying the defendant of the line of proof that plaintiff would pursue on the trial to establish the principal fact, to-wit, negligence. What plaintiff was required to prove to establish his cause of action, was negligence, and whether negligence was committed by the acts of omission or commission set forth in the petition was immaterial to his right of recovery, provided the jury believed from the evidence the defendant was negligent in one or more, or in all the ways alleged in the petition, and that its negligence was the proximate cause of plaintiff's injury. And if four of the jurors believed that its negligence was in the non-observance of the speed ordinance, and four others that it was in the non-observance of the vigilant watch ordinance, and the remaining four that it consisted in the running of the car at an excessive and negligent speed, would not the twelve find the defendant was negligent as alleged in the petition? The action was based on negligence— not on the way in which it was committed. The specifications were for the defendant's benefit to notify it of.

the bounds in which plaintiff would confine his evidence. When the evidence was in, it was then the province of the jury to determine whether or not the principal fact —negligence within the bounds of the petition—had been established, not within one boundary line, or a particular boundary line, but within all of them, generally, not specifically.

4. It is claimed by defendant that the damages are excessive. In view of plaintiff's evidence tending to show that as a result of the injury he had been reduced from a strong, robust man to a mere physical wreck, had lost the hearing of one ear and is partially deaf in the other, his eyesight greatly impaired and his sense of touch, in a degree, lost, and that his bodily pain and mental anguish have continued from the day of the injury down to the time of the trial and will most likely continue for an indefinite time in the future, we do not think the damages excessive.

The judgment is affirmed. All concur. *Goode, J.,* on the ground that the instructions given were sufficiently explicit as to what the jury must find in order to return a verdict for the plaintiff.