53 P.3d 1145

**In re the DETENTION OF WILBER W.**

**No. 1 CA–MH 01–0008 SP.**

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 11, 2002.

**302**

William J. Ekstrom, Jr., Mohave County Attorney By James J. Zack, Chief Deputy County Attorney, Kingman, Attorneys for Appellee.

Janet Napolitano, Arizona Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Diane M. Acosta, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Eric J. Engan, P.C., Kingman and Kristi A. Riggins, Phoenix, Attorneys for Appellant.

Office of the Legal Advocate By Susan Sherwin and Steve Tucker, Deputy Legal Advocate, Phoenix, Amicus Curae.

## OPINION

GEMMILL, Judge.

¶ 1 Based on application of due process principles enunciated by the United States Supreme Court, we uphold the constitutionality of Arizona's Sexually Violent Persons Act ("Act"). However, we vacate the finding that Appellant Wilber W. is a sexually violent person ("SVP"), and we remand for further proceedings consistent with this decision.

. ¶ 2 Wilber appeals from an order committing him to the Arizona Community Protection and Treatment Center as an SVP following a jury trial conducted pursuant to the Act. *See* Ariz.Rev.Stat. ("A.R.S.") §§ 36–3701 through—3717 (Supp.2001). Originally, Wilber raised several evidentiary issues on appeal. After briefing of those issues, the United States Supreme Court decided the case of *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002), and we requested supplemental briefing.

¶ 3 Wilber now argues that the Act is unconstitutional and violates the due process rights of persons committed thereunder by not requiring a finding of serious difficulty in controlling behavior, in accordance with *Crane.* He also contends that he was improperly found to be an SVP because the trial court failed to give a jury instruction defining "likely" in A.R.S. § 36–3701(7)(b) to mean "highly probable" that he would "engage in acts of sexual violence." The State relies on the Arizona Supreme Court case of *In re Leon G.,* 200 Ariz. 298, 26 P.3d 481 (2001), *vacated by Glick v. Arizona,* 535 U.S. 982, 122 S.Ct. 1535, 152 L.Ed.2d 461 (2002), and responds that the Act "sufficiently narrows the class of persons eligible for confinement to those who have serious diminished control over their dangerousness ...." The

State further argues that Wilber has waived his objection to the instruction defining the term "likely."

¶ 4 The day before oral argument in this court, the United States Supreme Court granted certiorari in *Leon G.*, vacated our supreme court's decision, and remanded that case for reconsideration in light of *Crane*. *See Glick v. Arizona*, 535 U.S. 982, 122 S.Ct. 1535, 152 L.Ed.2d 461. Although the effect of *Crane* on the Arizona Act is currently pending before our supreme court in *Leon G.*, we nonetheless are called upon to resolve the case before us.

¶ 5 We hold that Arizona's Sexually Violent Persons Act allows civil commitment of a person only if a jury finds beyond a reasonable doubt that the person:

1. has a "mental disorder" as defined in A.R.S. § 36–3701(5);

2. is a "sexually violent person" as defined in A.R.S. § 36–3701(7) with the term "likely" explained as meaning "highly probable"; and

3. has serious difficulty controlling his or her behavior.

Because there was no specific finding at Wilber's commitment hearing that he has serious difficulty controlling his behavior, we vacate the commitment order and remand for further proceedings.

### CONSTITUTIONAL ANALYSIS

¶ 6 In *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the United States Supreme Court upheld the constitutionality of the Kansas SVP act.[1] The court concluded that the Kansas act complied with due process because it "requires a finding of future dangerousness, and then links that finding to the existence of a 'mental abnormality' or 'personality disorder' that makes it difficult, if not impossible, for the person to control his dangerous behavior." *Id.* at 358, 117 S.Ct. 2072.

¶ 7 Last year, one panel of this court and the Arizona Supreme Court reached different conclusions regarding the interpretation of *Hendricks*. This court concluded that *Hendricks* required a finding of volitional incapacity and that the Act was unconstitutional because it did not contain such a requirement. *In re Leon G.*, 199 Ariz. 375, 381, ¶ 23, 18 P.3d 169, 174 (App.2001), *vacated by* 200 Ariz. 298, 26 P.3d 481. The Arizona Supreme Court disagreed and upheld the constitutionality of the Act in *Leon G.*, 200 Ariz. 298, 26 P.3d 481, *vacated by Glick*, 535 U.S. 982, 122 S.Ct. 1535, 152 L.Ed.2d 461.

¶ 8 An SVP is defined in the Act as:

a person to whom both of the following apply:

(a) Has ever been convicted of or found guilty but insane of a sexually violent offense or was charged with a sexually violent offense and was determined incompetent to stand trial.

(b) Has a mental disorder that makes the person likely to engage in acts of sexual violence.

A.R.S. § 36–3701(7). A "mental disorder" means a:

paraphilia, personality disorder or conduct disorder or any combination of paraphilia, personality disorder and conduct disorder that predisposes a person to commit sexual acts to such a degree as to render the person a danger to the health and safety of others.

A.R.S. § 36–3701(5). Our supreme court concluded that it was not constitutionally necessary to find volitional incapacity as a separate element under the Act. *Leon G.*, 200 Ariz. at 301, ¶ 10, 26 P.3d at 484. Instead, the court interpreted *Hendricks* in the following manner:

We think the [*Hendricks*] Court's explanation makes clear its view that requiring that dangerousness be linked with or caused by an additional factor, such as

---

1. The Kansas SVP act defines a "sexually violent predator" as "any person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence." Kan. Stat. Ann. § 59–29a02(a)

(1994). A "mental abnormality" is a "congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." Kan. Stat. Ann. § 59–29a02(b).

mental illness or abnormality, satisfies the notion that some "volitional impairment" must render those who fit within the subclass subject to confinement dangerous "beyond their control." That is, if the state establishes not only that a person is dangerous, but also that a mental illness or abnormality caused the dangerousness, the state has met its burden to show a lack of control.

*Id.* at 302, ¶ 12, 26 P.3d at 485.

¶ 9 After *Leon G.,* the United States Supreme Court in the recent case of *Kansas v. Crane,* 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856, clarified the constitutional requirements set forth in *Hendricks.* In *Crane,* the Kansas Supreme Court had reversed the civil commitment of a convicted sex offender, concluding that *Hendricks* "insists upon 'a finding that the defendant cannot control his dangerous behavior.' " *Id.* at 869. The State of Kansas appealed, arguing that *Hendricks* does not require the State to always prove that an individual is completely unable to control his behavior to warrant civil commitment. *Id.*

¶ 10 The United States Supreme Court agreed with the State of Kansas that *Hendricks* does not mandate a finding of *total* inability to control behavior. However, the Supreme Court stressed that there must be proof of serious difficulty in controlling behavior:

> [In *Hendricks,*] we did not give to the phrase "lack of control" a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, "inability to control behavior" will not be demonstrable with mathematical precision. *It is enough to say that there must be proof of serious difficulty in controlling behavior.* And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the

dangerous but typical recidivist convicted in an ordinary criminal case.

*Id.* at 870 (emphasis added).

¶ 11 The State contended at oral argument in this appeal that our supreme court opinion in *Leon G.* controls the resolution of this case. We disagree because the United States Supreme Court has vacated that decision. *Glick,* 535 U.S. 982, 122 S.Ct. 1535, 152 L.Ed.2d 461. We therefore address again the constitutionality of the Act.[2]

## THE ARIZONA ACT IS CONSTITUTIONAL

¶ 12 After *Hendricks,* it was clear that due process required at least two findings to be made before a sex offender could be committed under a civil commitment statute: a finding of dangerousness linked with the existence of a mental abnormality or personality disorder. 521 U.S. at 358, 117 S.Ct. 2072. The Arizona Act includes these two requirements. To be committed under the Act, a person must have a "mental disorder" that predisposes the person to commit sexual acts to such a degree as to render the person a "danger" to the health and safety of others. A.R.S. § 36–3701(5).

¶ 13 Does due process, according to *Hendricks,* also require an additional finding of volitional incapacity? Prior to *Crane,* various courts reached different conclusions from *Hendricks.* The Kansas Supreme Court read *Hendricks* as requiring proof of *total* volitional impairment. *In re Crane,* 269 Kan. 578, 7 P.3d 285, 290 (2000). This court in *Leon G.,* relying in part on the Kansas Supreme Court opinion in *Crane,* concluded that a finding of volitional incapacity was necessary and that Arizona's Act was unconstitutional because it did not require such a finding. 199 Ariz. at 381, ¶ 23, 18 P.3d at 175. The Arizona Supreme Court, on the other hand, concluded that the Act was constitutional because the statutory language requires proof of dangerousness caused by a mental illness or abnormality, which necessarily includes a degree of volitional impair-

---

**2.** Prior to *Leon G.,* this court in *Martin v. Reinstein,* 195 Ariz. 293, 987 P.2d 779 (App.1999)

carefully addressed and resolved several other important constitutional challenges to the Act.

ment. *Leon G.*, 200 Ariz. at 302, ¶ 12, 26 P.3d at 485.

¶ 14 The United States Supreme Court in *Crane* has now clarified that due process does not require total volitional incapacity. *See* 122 S.Ct. at 870 ("The word 'difficult' indicates that the lack of control to which this Court referred [in *Hendricks* ] was not absolute."). However, due process does require "proof of *serious difficulty* in controlling behavior." *Id.* (emphasis added). It is against this constitutional background that we must consider whether Arizona's Act is constitutional.

¶ 15 Based on *Crane*, it is not enough that Arizona's Act requires a finding of dangerousness linked with the existence of a mental disorder. To pass constitutional muster, the Act must also require proof of serious difficulty controlling behavior. We conclude that it does.

¶ 16 We must presume statutes are constitutional and, if possible, construe them so as to avoid rendering them unconstitutional, resolving any doubts in favor of their constitutionality. *Bills v. Arizona Prop. & Cas. Ins. Guar. Fund,* 194 Ariz. 488, 497, ¶ 30, 984 P.2d 574, 583 (App.1999). Our primary goal in interpreting statutes is to ascertain and give effect to the intent of the legislature. *Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, 529, ¶ 8, 19 P.3d 1241, 1245 (App.2001). "We focus on the language of a statute and, if it is inconclusive or ambiguous, we then consider other factors such as the statute's context, subject matter, historical background, effects, consequences, spirit and purpose." *Id.*

¶ 17 The language of the Act does not use the language found in *Crane* regarding the requirement of serious difficulty in controlling behavior. Due process does not require, however, that state legislatures use particular language in defining mental disorders. *Crane,* 122 S.Ct. at 871 ("For one thing, the States retain considerable leeway in defining

the mental abnormalities and personality disorders that make an individual eligible for commitment"); *In re Dutil,* 437 Mass. 9, 768 N.E.2d 1055, 1061–62 (2002). We decline to find the Act unconstitutional simply because our legislature did not define the requisite mental disorder under the Act using the specific phrase "serious difficulty in controlling behavior." Instead, we conclude, based on a fair reading of the language utilized by the legislature, that a finding of serious difficulty in controlling behavior is implicitly required under the Act.

¶ 18 The Act defines an SVP as a person with a "mental disorder" that *"makes* the person likely to engage in acts of sexual violence." A.R.S. § 36–3701(7) (emphasis added). A disorder that "makes" a person likely to engage in sexual violence is a disorder that impairs or tends to overpower the person's ability to control his or her behavior. Furthermore, the Act defines the phrase "mental disorder" as a disorder that "predisposes" a person to "commit sexual acts to such a degree as to render the person a danger to the health and safety of others." A.R.S. § 36–3701(5). A person who has a mental disorder that *predisposes* the person to commit sexual acts that are dangerous to others and that *makes* the person likely to engage in sexual violence is a person who has serious difficulty in controlling his or her behavior.[3] Because we conclude that the language of Arizona's Act implicitly requires a finding of serious difficulty in controlling behavior, we hold that the Act is constitutional. *See In re Commitment of Laxton,* 254 Wis.2d 185, ¶ 23, 647 N.W.2d 784, 794 (2002) ("proof that due to a mental disorder it is substantially probable that the person will engage in acts of sexual violence necessarily and implicitly includes proof that such person's mental disorder involves serious difficulty in controlling his or her sexually dangerous behavior"); *see also People v. Wollschlager,* 99 Cal. App.4th 1303, 122 Cal.Rptr.2d 171 (.2002) (upholding constitutionality of California's

---

**3.** We note that this court in *Leon G.* did not, in reaching its opposite conclusion, focus on the term "makes." Also, our colleagues in *Leon G.* quoted a law-psychology journal article discussing a difference between a desire not resisted and an irresistible desire. 199 Ariz. at 380, ¶ 20, 18

P.3d at 174. We acknowledge that this distinction may be significant and may be addressed with witnesses and argument in these commitment cases, but we do not read *Hendricks* or *Crane* as imposing upon the states a requirement to draw this precise distinction.

Sexually Violent Predators Act) (petition for review filed Aug. 19, 2002).

¶ 19 Our approach parallels that taken in both *Hendricks* ·and *Crane.* The United States Supreme Court in *Hendricks* upheld the constitutionality of the Kansas SVP act, even though its language did not specifically require a finding of serious difficulty in controlling behavior. 521 U.S. at 358, 117 S.Ct. 2072. *See also* Kan. Stat. Ann. § 59–29a02(b)(1994). Similarly, the court in *Crane,* after clarifying that *Hendricks* should not be read to require total volitional impairment, vacated the Kansas Supreme Court decision and remanded that case for further proceedings consistent with the *Crane* decision. 122 S.Ct. at 872. The Kansas SVP act was not declared unconstitutional.

## SPECIFIC JURY INSTRUCTION ON SERIOUS DIFFICULTY CONTROLLING BEHAVIOR

■ ¶ 20 The essence of *Crane* is that due process does not permit a person to be deprived of liberty without a finding of serious difficulty in controlling behavior. Accordingly, we further hold that juries in commitment hearings under the Act must, to comply with due process, be specifically instructed on the requirement of finding serious difficulty in controlling behavior.

■ ¶ 21 We recognize that some courts in other jurisdictions have declined, after *Crane,* to require a jury instruction specifically directing jurors to make such a finding. *See Laxton,* 647 N.W.2d at 795, ¶ 27; *People v. Hancock,* 329 Ill.App.3d 367, 264 Ill.Dec. 755, 771 N.E.2d 459, 465 (2002). However, because of the significant loss of liberty if committed under the Act, fundamental fairness requires that the jury be explicitly instructed that it must find serious difficulty in controlling behavior in order to find that an individual is an SVP. *White v. State,* No.

1D01–28, 2002 WL 1926404, 826 So.2d 1043 (Fl.Dist.Ct.App. Aug. 22, 2002) (per curiam); *Converse v. Dep't of Children & Families,* 823 So.2d 295, 296–297 (Fl.Dist.Ct.App., 2002); *Thomas v. State,* 74 S.W.3d 789, 792 (Mo.2002); *Spink v. State,* 112 Wash.App. 287, 48 P.3d 381, 382 (2002). We agree with the reasoning of the dissent in *Laxton:*

> "Although the words of [Wisconsin's SVP statute] might be interpreted by lawyers and judges to include a link between the mental disorder and a serious difficulty in controlling behavior, the jury instructions based directly on the language of [Wisconsin's SVP statute] do not set forth this link for non-lawyers." *Laxton,* 647 N.W.2d at 798, ¶ 45 (Abrahamson, C.J., dissenting).

Therefore, at civil commitment hearings under the Act, the jury should be instructed that a "mental disorder" means:

> a paraphilia, personality disorder or conduct disorder or any combination of paraphilia, personality disorder and conduct disorder that (1) predisposes a person to commit sexual acts to such a degree as to render the person a danger to the health and safety of others and (2) causes the person to have serious difficulty in controlling his or her behavior.

*See Thomas,* 74 S.W.3d at 792. We emphasize that these precise words are not necessarily required. But the jury must not be permitted to find a person to be an SVP without having found the person to have serious difficulty in controlling his or her behavior.[4]

■ ¶ 22 The record before us reveals that the jury was not instructed to determine if Wilber has serious difficulty controlling his behavior, and we cannot conclude as a matter of law that the evidence demonstrated that Wilber does in fact have serious difficulty controlling his behavior.[5] Accordingly, we vacate the commitment order and remand for a new commitment hearing with the jury to

---

4. This suggested instruction is only part of the necessary instructions. For example, the jury must be instructed on the definition of a "sexually violent person," *see* A.R.S. § 36–3701(7), in addition to the meaning of the phrase "mental disorder." *See* A.R.S. § 36–3701(5).

5. The psychologist who evaluated Wilber did not provide any testimony suggesting that Wilber had any problem controlling his behavior, let alone a serious difficulty in controlling his behavior. Nor did the prosecutor argue in closing argument that Wilber lacked the ability to control his behavior. Finally, Wilber did not admit that he had any difficulty in controlling his behavior.

be instructed in accordance with this decision.

## DEFINITION OF THE TERM "LIKELY"

¶ 23 Our supreme court in *Leon G.* held that "likely" in A.R.S. § 36–3701(7)(b) of the Act means "highly probable" and that juries should be so instructed. 200 Ariz. at 306, ¶ 30, 26 P.3d at 489. In his supplemental brief, Wilber argues that the jury instructions at his trial constituted fundamental error because the term "likely" was not defined as "highly probable" but rather as "probable rather than merely possible." Although not dispositive of this appeal, we choose to discuss the propriety of this instruction because it will recur at Wilber's commitment hearing on remand. We also address this issue because defining "likely" as "highly probable" is required to achieve the legislature's intent under the Act. Finally, this clarification will help juries distinguish between dangerous sexual offenders who should be committed compared to general recidivists appropriately dealt with in ordinary criminal cases. *See Crane*, 122 S.Ct. at 870.

¶ 24 Under the Act, an SVP means a person who "[h]as a mental disorder that makes the person *likely* to engage in acts of sexual violence." A.R.S. § 36–3701(7)(b)(emphasis added). The term "likely" is undefined in the Act. We agree with our supreme court's reasoning in *Leon G.* that "likely" as used in the Act means "highly probable":

In this instance, after considering other statutory language, we conclude that the legislature's use of the term "likely" reflects its decision to require a standard somewhat higher than "probable." *Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991) (when the meaning of a statutory term is not clear, we look to the overall language of the statute for assistance). The legislature provided guidance as to the meaning of "likely" in section 10 of the [Act], which sets out the legislative findings that led to passage of the act. Ariz. Sess. Laws 1995, Ch. 257, § 10. Subsection 3 directly addresses the civil commitment procedure adopted as part of the act. In that subsection, the legislature notes that, for a "small but extremely dangerous group of sexually violent predators," the *"likelihood of* the sex offenders engaging in *repeat acts* of predatory sexual violence *is high."* *Id.* (emphasis added). That language bears a striking similarity to the common and dictionary definitions of "likely" as being "highly probable." Construing the term as meaning "highly probable" also gives effect to the legislative decision to distinguish the standard in the [Act] from that in the general commitment statute, which requires showing behavior that "can reasonably be expected ... to result in serious physical harm." A.R.S. § 36–501.5 (1993). If the legislature had intended the same standard to apply in the two statutory schemes, we think the legislature would have used the same terms. Use of "likely" rather than "reasonably expected" indicates the legislature intended to adopt a more stringent standard in the [Act].

*Leon G.*, 200 Ariz. at 306, ¶ 30, 26 P.3d at 489. We do not believe that the *Crane* opinion or the United States Supreme Court's vacating of *Leon G.* was intended to vitiate our supreme court's interpretation of our state statute in *Leon G.*, and we adopt and follow this reasoning here. On remand and in all future SVP commitment cases, the jury should be instructed that "likely" means "highly probable" under § 36–3701(7)(b).

## EVIDENTIARY ISSUES

¶ 25 Wilber alleges the trial court erred in: (1) admitting two of his prior convictions; (2) allowing the State to admit hearsay statements by asking Wilber on the stand to verify statements from a presentence report; and (3) permitting the State to ask Wilber irrelevant questions. Because we are remanding for another commitment hearing, some of these evidentiary issues may recur and therefore we will briefly address them.

### *Prior Convictions*

¶ 26 Wilber first challenges the trial court's admission of his 1983 conviction for oral copulation of a child in California. The State responds that the 1983 conviction is a

"sexually violent offense" as defined in the Act, *see* A.R.S. § 36–3701(6), and thus was a necessary element for the jury to find Wilber to be an SVP. We agree.

¶ 27 Sexual conduct with a minor under A.R.S. § 13–1405 constitutes a sexually violent offense under the Act. *See* A.R.S. § 36–3701(6)(a); A.R.S. § 13–1405(A) (2001) ("A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age."). Wilber's 1983 conviction constitutes a sexually violent offense under Arizona's Act even though the conviction occurred in California. *See* A.R.S. § 36–3701(6)(d) (sexually violent offense means "[a]n act committed in another jurisdiction that if committed in this state would be a sexually violent offense listed in subdivision (a) or (b) of this paragraph."). Accordingly, the trial court did not err in admitting Wilber's 1983 conviction for oral copulation with a child.[6]

¶ 28 Wilber also complains that the trial court incorrectly admitted his 1995 conviction for indecent exposure because indecent exposure is not considered a sexually violent offense under the Act. The record reveals, however, that Wilber stipulated that the 1995 conviction would be admissible under Arizona Rule of Evidence 609, presumably for impeachment purposes.[7] If the State on remand offers evidence of the 1995 conviction for the purpose of impeachment, the trial court should again consider the admissibility of the evidence under Rule 609.

### Hearsay Statements

¶ 29 Wilber argues that the trial court erred by allowing the State to ask him what was said in a presentence investigation report about a 1997 aggravated assault conviction. Wilber claims that this method of questioning impermissibly allows hearsay in through the "backdoor" by asking a witness to confirm a hearsay statement. Because the State can prove a prior conviction without resort to a presentence report—and indeed proved it with proper documentation at trial—it is unlikely that this issue will recur on remand. We do not perceive a need to address the issue further.

### Irrelevant Questions

¶ 30 Finally, Wilber asserts that the trial court allowed the State to ask him irrelevant questions. Specifically, the State asked Wilber about the length of his prison sentence and the duration of his second marriage. Because these particular questions may not necessarily be asked on remand, we decline to address Wilber's relevancy objections at this time.

### Conclusion

¶ 31 We vacate Wilber's commitment order and remand for further proceedings consistent with this decision.

CONCURRING: JEFFERSON L. LANKFORD and JAMES B. SULT, Judges.

---

6. Wilber also argues that the 1983 conviction should not be admitted because it is more than ten years old, citing Ariz. R. Evid. 609(b) ("Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction . . . ."). The Arizona Rules of Evidence do apply to proceedings under the Act, *see* A.R.S. § 36–3704(B), but Rule 609 pertains to impeachment of a witness by a prior conviction. The State offered the 1983 conviction as substantive evidence of an element of the Act and not for impeachment purposes. Accordingly, the time limitation in Rule 609(b) for a prior conviction offered for impeachment is not applicable here. Under the Act, a person can be found to be an SVP if the person has "ever been convicted" of a sexually violent offense and meets other requirements. A.R.S. § 36–3701(7)(a).

7. "Indecent exposure to a person under the age of fifteen years is a class 6 felony." A.R.S. § 13–1402 (2001).